**Anton W. Kleinschnittger, Appellee, v. Benjamin L. Dorsey et al., Appellants.**

**M. H. Boals Planing Mills Company, Appellee, v. Benjamin L. Dorsey et al., Appellants.**

## Consolidated for Hearing.

1. CONTRACTS—*when certificate of architect not condition precedent to recovery.* Any act of the owner under a building contract, which makes the architect's certificate a condition precedent to payment, which prevents the contractor from obtaining such a certificate, or any act of the owner showing that he has waived such a provision, will release the contractor from the duty of procuring such certificate.

2. CONTRACTS—*what not essential to recovery under building.* A literal compliance with the specifications for a dwelling house is not necessary to a recovery by the contractor, if he has in good faith made a substantial performance thereof.

3. LIENS—*burden to show damage under Mechanic's Lien Act.* Under the Mechanic's Lien Act the burden of proof is upon the owner to establish what damages, if any, should be allowed in mitigation of the amount claimed by way of lien.

4. LIENS—*effect of omission of necessary parties to proceeding under the Mechanic's Lien Act.* Only one suit can be maintained under the Mechanic's Lien Act; all parties having a lien or interest in the premises must be brought together in one suit; if any party is omitted, the suit will be dismissed for want of necessary parties.

Mechanic's lien. Appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in

this court at the February term, 1909. Affirmed in part, reversed in part, and remanded. Opinion filed February 11, 1910.

**Statement by the Court.** On March 8, 1906, Anton W. Kleinschnittger, one of the appellees, filed his petition in the court below for a mechanic's lien against Benjamin L. Dorsey and Fannie L. Dorsey, appellants, and M. H. Boals Planing Mill Company, one of the appellees. On the same day M. H. Boals Planing Mill Company filed its petition for a subcontractor's lien against said appellants and Anton W. Kleinschnittger, both of said petitions being filed in chancery. Said petitions aver in substance that said Kleinschnittger, as contractor, and Benjamin L. Dorsey on February 15, 1904, entered into a contract to build and complete by November 1, 1904, a dwelling house for said Dorsey, except plumbing, mantels and buffets or china closets, on lots No. 2 and 3, Block 21, in the city of Alton. The consideration for the building of said dwelling was $20,538. The terms of said contract were reduced to writing but were never signed by the said parties and are set out in *haec verba* in said bills. They aver that the said contractor complied with all the terms of said contract, except wherein changes were made therein by agreements with said Dorsey, and that the said Dorsey and wife took possession of the same January 15, 1906, the same then being completed; that there is due the said contractor the sum of $7,813.73 on said contract, $3,088.75 of which is due M. H. Boals Planing Mill Company for lumber and mill work, as subcontractors under said contract, and that they are entitled to liens for the same. The appellants answered the said bill admitting said contract; but denying that the said building was erected according to said contract or that appellees, or either of them is entitled to a lien. The appellants also filed a crossbill against said Kleinschnittger, averring that he did not perform his part of said contract; that the work

and materials furnished therefor were improper and unfit, etc., and that they were thereby greatly damaged and delayed in the completion thereof; and they ask that their damages be ascertained and decreed to them. The defendant in cross-bill answered denying the allegations of the cross-bill. Replications were filed to both answers. Said causes were consolidated by agreement of the parties; and on evidence heard, the court found in favor of complainants and against appellants, and decreed that there was due said Kleinschnittger on said contract, $3,833.13, including the sum of $3,088.75, due M. H. Boals Planing Mill Company for materials and for which it was decreed a lien; and the said Kleinschnittger was decreed a lien for the remainder thereof, $744.38, and that said sums be paid in sixty days.

Appellants appeal and assign errors and contend that the decree is contrary to the law and the evidence; and that the court erred in rendering a decree for said sums in favor of complainants and against defendants, appellants.

C. H. BURTON and R. E. DORSEY, for appellants.

LEVI DAVIS, for appellees.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The chief contention of the appellants in this case is that the contract in question makes the architect the judge of the quality of the materials used and of the work performed; and, also, makes him the arbiter of the amount of money to be paid by the owners for the work and materials; and that the contractor not having obtained the final certificate of the architect cannot recover in this action. The provisions of the contract requiring that no payments of money to Kleinschnittger shall be made except upon certificate of the architect were clearly waived by the said owner, Dor-

sey, as claimed by appellee; and the conduct of Dorsey and the architect were such as to warrant the lower court in holding that said provisions are not binding on Kleinschnittger. The facts bearing on this question in the record show that by the testimony of both Kleinschnittger and Dorsey, the latter paid to the former on this contract the sum of $18,015.60; and that no certificate was demanded or furnished, except one for $5,000 for the first and second installments due the contractor, and that all payments made were without regard to the certificate. This certificate bears date of October 18, 1904. The payments bear dates from March 22, 1904, to January 19, 1906, some of them being to Kleinschnittger direct, and others to his subcontractors on his order. The letter that Link, the architect, wrote to Dorsey enclosing this certificate indicates clearly that it was issued by Link as a matter of form and that he knew little or nothing about the work done, or even about the contents of Kleinschnittger's contract. Kleinschnittger says that Dorsey told him that he would pay him along as the payments came due, and that he did not ask for any more certificates, and that the architect said no more about them. The record corroborates this and also shows that numerous changes were made in this contract by which were added more than $2,600 worth of extras; and that these changes in the building were all made by agreements of Kleinschnittger and Dorsey, or Mrs. Dorsey who was authorized by her husband to make them. By article III of the contract no alteration shall be made in the work except on written order of the architect; and the amount to be paid therefor by the owner, or allowed by the contractor, by such alterations shall be stated in said order. We fail to find in this record where the architect ever fixed any such allowance for work, and only in one or two instances did he suggest any allowance even for the added material; and he absolutely refused to make a final certificate to Kleinschnittger for the reason that

he did not know anything about what payments were made, and for the further reason that the changes made by Mrs. Dorsey were taken out of his hands. He also told William J. Boals that Dorsey ordered him "not to O. K. any more bills," when Boals went to him to get a certificate at Dorsey's request. On January 20, 1906, the architect writes the following letter to Kleinschnittger, to wit:

"In view of the fact that a great deal of the material and workmanship of the Dorsey residence are defective, unfinished and unsatisfactory, and that the building was delayed an incredible period, it follows that my client, the owner, is entitled to the difference between good material and bad material, good workmanship and bad workmanship, and to the forfeiture caused by delay, and since the question of the proper amount for same will be difficult of adjustment by a party representing only one side, I would suggest to you the advisability of taking advantage of your privilege to submit these matters to arbitration."

While the architect insists that the contract was not performed, yet we think the court was warranted in finding that this contention was only an afterthought of both the architect and the owner, and that the owner, Dorsey, by his said conduct is estopped to now insist on said provisions. After Dorsey's letter of innumerable complaints to the architect, dated September 8, 1905, more than a year after he had dealt directly with Kleinschnittger, the business of the architect was seemingly directed mainly to making complaints by almost weekly letters to the contractor, continuing for more than two months after Dorsey had taken possession of the building and was living in it. Any act of the owner under such a building contract which prevents the contractor from obtaining such certificate, or any conduct of the owner showing that he had waived such a provision, will release the contractor from the duty of procuring such certificate. Haunroth v. Peters, 50 Ill. App. 366; Foster v. Mc-

Keown, 192 Ill. 339; Vermont Street M. E. Church v. Brose, 104 Ill. 207; Fowler v. Deakman, 84 Ill. 132.

In regard to the provisions for arbitration it will be seen by Article XII that there is probably not a single item for which a decree is entered in this case that was required to be settled by arbitration. The question of arbitration was also waived. The architect made no allowances for extras, or orders for extensions of time to the contractor as provided in articles III and VII; and the parties to this contract proceeded without any reference to these provisions, and hence there was nothing requiring arbitration of these matters. Article XII providing for arbitration allows the contractor to select one of the arbitrators in case arbitration is had. Mr. Dorsey's offer to arbitrate as shown by his evidence was on condition that Link, the architect, select one of the arbitrators, and Dorsey one, and those two arbitrators, the third one. This does not show an offer in good faith to arbitrate according to the contract. There is nothing in this case that binds the contractor to arbitration, or that entitles the appellants to arbitration, so far as we are able to see.

Kleinschnittger substantially performed his contract to build this house, and is entitled to recover the contract price added to the value of the extras contracted for by Dorsey, less any necessary expense of conforming the work to the exact requirements of the contract. A literal compliance with the specifications for a dwelling house is not necessary to a recovery by a contractor, if he has in good faith made a substantial performance thereof. Keeler v. Herr, 157 Ill. 57; Foster v. McKeown, 192 Ill. 347; Bloomington Hotel Company v. Garthwait, 227 Ill. 613; Hart v. Carsley Manufacturing Co., 116 Ill. App. 159.

The evidence for Kleinschnittger shows that he furnished extra materials for this house by reason of the changes made in its construction costing, $1,704.73. He also claims for extra work, $992.50. This latter

sum is made up of the following sums: $346 extra for stone work which was agreed on and paid by Dorsey; the sum of $46 for extra plastering, $334.84 for scraping second and third story floors, and the other extras named by Mr. Kleinschnittger in his cross-examination. All of these items appear to be reasonable and their reasonableness is not challenged by the evidence. Many of these extras have already been paid for by Dorsey as is shown by the evidence. By the contract price he was to have $20,538. This makes a total charge against Dorsey in favor of Kleinschnittger of $23,235.23. The total payments claimed by Dorsey are $18,015.60, leaving a balance in Kleinschnittger's favor of $5,219.63. Of this sum Boals P. M. Company are entitled to $3,088.75, leaving still a balance of $2,130.88. The court only decreed for Kleinschnittger the sum of $744.38, showing that the court charged up to Kleinschnittger $1,386.50 for bad work, or for damage by reason of bad work and delay. The account is not stated by the court and we cannot ascertain what this charge of $1,386.50 against Kleinschnittger is composed of. Under the evidence we think it quite enough to allow for damages for defective work and delay.

We have examined all the evidence with reference to the mill work and lumber of the M. H. Boals Planing Mill Co. and are satisfied with the court's finding that it was entitled to a lien for full payment of the amount claimed. It appears that the mill work condemned by the architect and some other carpenters, came out of the same car that the Haskell Mill work did, and that it was the same kind costing the same money. The architect pronounced that the Haskell Mill work was first class. We have also examined the extravagant claims for damages in the report of Ramsey and Evans to the architect made January 2, 1907, while the family were in the house and almost a year after Dorsey had taken possession thereof. We have also examined the testimony of all the other wit-

nesses in the case.  While it is true that in some respects the workmanship on this house is inferior and in a few particulars omissions were made, yet we feel quite sure that substantial justice has been done and the decree of the court in the main is right.  The appellees have been very much handicapped in this case in obtaining evidence on account of the refusal of the appellant to allow them to inspect, or have inspected, the inside of this house for the purpose of permitting witnesses to reply to the testimony of the St. Louis and other witnesses for appellant.  Mr. Dorsey admits that this request was made of him by appellees and he refused it.  This was very unfair to appellees in view of the fact that appellants' witnesses testified from recent personal inspections of the building that were refused to the witnesses of appellees.

In his account Dorsey has claimed the forfeiture for the full time the building was delayed in its construction.  The contract provides that the contractor and the owner shall both be remunerated for any damage by reason of delay caused by the other.  Dorsey's and Kleinschnittger's evidence shows that at least ten months or more of this delay was caused by Dorsey himself.  Dorsey says in his testimony that he held Kleinschnittger off until May, 1904, before allowing him to begin the contract and that there was still further delay caused by him while he was trying to purchase the property of Mr. Pierson.  Kleinschnittger's evidence also fully shows that there was two or three months' delay caused in the change in the stone foundation, six weeks' delay in changing the tile roof to slate and two months' more delay on account of Mrs. Dorsey's indecision about the plumbing.  Kleinschnittger also says that Mrs. Dorsey caused much more delay by making the other changes and by causing men to quit work by standing over them and complaining and by ordering the work stopped.  While we are satisfied Kleinschnittger was responsible for some of the delay, yet he cannot be charged with all of it

nor with half of it under the evidence. Much of Dorsey's evidence is given by way of naming defects in the building without proof as to the amount of the damage thereof. Under the Mechanic's Lien Act the burden of proof is upon the owner of establishing what damages, if any, should be allowed in mitigation of the amount claimed by way of lien. Miller v. Calumet Lumber & Manufacturing Co., 121 Ill. App. 56.

There was, however, one error in this decree. The two independent cases became consolidated by agreement. After they were consolidated they together simply formed one suit and were so treated by the court. Only one suit could be maintained under the Mechanic's Lien Act. All parties having a lien or any interest in the premises must be brought together in one suit. If any party is omitted the suit will be dismissed for want of necessary parties. For this reason separate suits could not have been maintained. Granquist v. Western Tube Co., 240 Ill. 132. It was therefore error to charge up the appellants with all the costs in both suits, as they were originally brought as independent suits. All clerk's and sheriff's costs and all other costs made in the suit filed by M. H. Boals Planing Mill Company before the suits were consolidated should be decreed against the appellees in this suit as they both committed the common error of bringing two suits, both suits being brought by the same attorney.

The decree will therefore be affirmed in part and reversed in part and remanded to the lower court for further proceedings in accordance with the views herein expressed.

*Affirmed in part, reversed in part and remanded.*

Mr. Justice SHIRLEY took no part in the decision of this case.